## A08A0657. MILLER v. THE STATE.
### (666 SE2d 35)

JOHNSON, Presiding Judge.

After a jury trial, James Miller was convicted of aggravated assault. He appeals, arguing that there is insufficient evidence to support the verdict, and that the trial court made erroneous evidentiary rulings and improperly became an advocate for the state. The arguments are without merit, and we thus affirm Miller's conviction.

1. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility, but determine only if there is sufficient evidence from which a rational trier of fact could find the accused guilty of the charged offenses beyond a reasonable doubt.[2]

Viewed in the light most favorable to the verdict, the evidence shows that shortly after midnight on January 26, 2003, Miller went to Club Synergy in Macon with his brother, Jerold Miller, and Jerold's fiancée. Miller drank at the club and was intoxicated by the time they left sometime between 1:30 and 2:00 in the morning. They then drove in Jerold's car to another Macon nightspot, Club South Beach.

When they arrived at Club South Beach, two 17-year-olds, Albert Swann and Oliver Horne, were sitting outside on a curb. Miller approached Swann and Horne, yelling, cursing and asking if they wanted to fight. Miller swung his fist at Swann, but missed and fell to the ground. He then got up and kicked Swann in the groin.

Jerold intervened at that point, grabbed Miller and tried to get him into the car. But Miller broke free from his brother and took another swing at Swann's face. Initially, Horne thought it was another missed punch and Swann said it did not feel like a very

---

[1] *Bond v. State*, 283 Ga. App. 620 (642 SE2d 223) (2007).
[2] Id. at 620-621.

strong hit. But Swann suddenly got very light-headed, put his hands to his face and fell to the ground bleeding profusely from a cut to his face.

Swann was treated by a plastic surgeon, who testified that the cut was at least 15 centimeters long, went down to the bone in many areas and required approximately 100 stitches. The cut began at the top left side of Swann's forehead, extended through his brow, went along the side of his nose, and ended at his lip. According to the plastic surgeon, the cut looked almost surgical, with very clean edges and no surrounding bruising. The doctor opined that the cut was consistent with a sharp instrument.

The state also introduced evidence of two similar transactions. The first occurred in 1998 during a fight at Miller's house when he allegedly cut a man with a box cutter. The second occurred in 2001 during an altercation when he allegedly cut a woman with a knife.

Miller contends that his aggravated assault conviction must be reversed because no weapon was recovered and none of the witnesses actually saw a weapon or "sharp instrument" as alleged in the indictment. However, "[e]ven in the absence of a description of the offensive weapon, evidence as to the nature, kind, and location of wounds inflicted is sufficient to allow the jury to infer the character of the weapon."[3] Here, the evidence that, as a result of Miller's attack, Swann suffered a clean cut from his forehead to his lip was sufficient to allow the jury to infer that the wound was caused by a sharp instrument and to find beyond a reasonable doubt that Miller is guilty of aggravated assault.[4]

2. Miller argues that the trial court erred in allowing the plastic surgeon to give his opinion that the cut to Swann's face was consistent with a sharp instrument. As Miller notes in his brief, the trial court expressly ruled that it was allowing the doctor's testimony, not as the opinion of an expert, but as that of a lay witness. We find no error in the trial court's ruling.

"It is established that lay witnesses may relate their opinion as to the existence of any fact so long as it is based upon their own experiences and observations, and so long as the matter referred to is within the scope of the average juror's knowledge."[5] In this case, the plastic surgeon based his opinion that the cut was consistent with a sharp instrument on his own observations that the cut had clean edges and was not surrounded by bruising. We agree with the trial court that whether or not a cut is consistent with having been

---

[3] (Citations and punctuation omitted.) *Hill v. State*, 230 Ga. App. 395 (496 SE2d 526) (1998).

[4] See *Talley v. State*, 209 Ga. App. 79, 81 (3) (432 SE2d 667) (1993).

[5] (Citation omitted.) *Weston v. State*, 276 Ga. 680, 682 (3) (580 SE2d 204) (2003).

made by a sharp instrument is within the ken of the average juror. The trial court thus did not err in admitting the doctor's lay opinion.[6]

3. Miller claims that the trial court improperly interjected itself into the case and became an advocate for the state by informing the prosecutor that he needed to call the doctor to testify about what caused the injury. Miller's claim misconstrues a discussion that took place between the attorneys and the court outside the presence of the jury.

During that discussion, the prosecutor indicated that he planned to call the doctor to testify, but the doctor was in surgery. The trial judge responded that if the prosecutor needed the doctor for his case, then they could make the necessary arrangements. Miller's attorney then asked, "I don't know that he needs the doctor, does he?" In response to that question by defense counsel, the trial judge made the now-challenged comment that he thought the state needed the doctor to testify because there was no evidence about what the cut was like. The prosecutor responded that he believed he had already presented sufficient evidence about the cut through the testimony of Swann and Horne, but he still wanted to call the doctor.

We first note that the judge's comment was made in direct response to a question asked by Miller's counsel, and one cannot complain of an alleged error that his own conduct procured or aided in causing.[7] Moreover, we have reviewed the portion of the trial transcript where Miller claims he objected to the judge's comment and find no such objection, which amounts to a waiver.[8] Finally, even if the issue were properly before us, we find that under the totality of the circumstances the trial court's comment did not rise to the level of improper advocacy.[9]

4. Miller complains that the trial court erred in admitting his mug shot into evidence without giving the jury a limiting instruction after he objected that it put his character in evidence and was irrelevant. Once again, Miller misconstrues exactly what happened at trial.

First, it was not his mug shot that was admitted into evidence, but was the photographic lineup from which Swann and Horne identified him. Second, we have reviewed the pages of the trial transcript at which he claims he made his character and relevancy objections, and while those pages do contain a relevancy objection,

---

[6] See *Dillingham v. State*, 275 Ga. 665, 667-669 (3) (571 SE2d 777) (2002) (former police officer and current district attorney office employee properly allowed to give lay opinion concerning reliability of in-person identifications).

[7] *Dameron v. State*, 267 Ga. App. 671, 672 (2) (601 SE2d 137) (2004).

[8] *Frazier v. State*, 247 Ga. App. 500, 501 (544 SE2d 198) (2001).

[9] See *O'Hara v. State*, 241 Ga. App. 855, 859 (3) (528 SE2d 296) (2000).

there is no character objection, so that issue is waived.[10] Indeed, even if the issue had been preserved, it is well established that mug shot evidence itself does not prejudice the defendant or place his character in issue.[11]

As for relevancy, the trial court did not err because photographic lineups can be admitted to establish a defendant's identity as the perpetrator of a crime even if the defendant himself has not raised the issue of identity.[12] Moreover, Miller made no request for a limiting instruction from the trial court and he has not indicated in his appellate brief precisely what sort of limiting instruction would have been appropriate. By failing to request a limiting instruction during the trial, he cannot complain about its absence for the first time on appeal.[13]

5. Miller argues that the trial court allowed one of the similar transaction witnesses to give testimony about a crime other than the similar transaction without a proper limiting instruction. We disagree.

During her testimony about the similar knife attack by Miller, the witness stated that Miller had also stolen money. The trial court denied Miller's motion for a mistrial based on the stolen money statement. But the trial court noted that the statement was not responsive to the question, admonished the witness in front of the jury and instructed the jurors to ignore the statement.

> Where a witness involuntarily injects into the trial improper and prejudicial matters, whether a mistrial must be granted or whether the effect can be corrected by instructions to the jury is a matter within the discretion of the trial court. We will not disturb the trial court's ruling absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact.[14]

In the instant case, the trial court's curative instruction was sufficient to prevent the improper testimony from having any prejudicial impact. Since Miller has failed to show any abuse of discretion, we will not disturb the trial court's ruling.

---

[10] See *Newton v. State*, 280 Ga. App. 709, 711-712 (634 SE2d 839) (2006) (objection to evidence raised for first time on appeal presents nothing for review).

[11] *Dowdy v. State*, 169 Ga. App. 14, 16 (4) (311 SE2d 184) (1983).

[12] *Thompson v. State*, 281 Ga. App. 627, 630 (2) (636 SE2d 779) (2006).

[13] *Matthews v. State*, 221 Ga. App. 129, 131 (3) (470 SE2d 518) (1996).

[14] (Citations omitted.) *Boynton v. State*, 287 Ga. App. 778, 782 (5) (653 SE2d 110) (2007).

6. Contrary to Miller's enumerated error, the trial court did not admit the similar transaction evidence for an improper purpose. The court ruled that the evidence was admissible to show Miller's bent of mind and course of conduct.

> Showing the defendant's motive, course of conduct, and bent of mind are legitimate purposes for the admission of similar transaction evidence, and when similar transaction evidence is admitted for these purposes, a lesser degree of similarity is required than when such evidence is introduced to prove identity. We will not disturb a trial court's finding of similarity unless it is clearly erroneous.[15]

The trial court's ruling was not clearly erroneous and will not be disturbed.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED JUNE 24, 2008 —
RECONSIDERATION DENIED JULY 10, 2008 — 

*Bernadette C. Crucilla*, for appellant.
*Howard Z. Simms, District Attorney, Gregory W. Winters, Assistant District Attorney*, for appellee.

---

[15] (Citations and punctuation omitted.) *Johnson v. State*, 289 Ga. App. 435, 437 (2) (657 SE2d 333) (2008).