## A10A2149. GIBSON v. THE STATE.
### (706 SE2d 585)

SMITH, Presiding Judge.

Gabriel Gibson appeals from his convictions for possession of a firearm during the commission of a crime, possession of marijuana with the intent to distribute, trafficking in MDMA ("ecstacy"),[1] and trafficking in cocaine. In his sole enumeration of error, Gibson asserts that he is entitled to a new trial based upon ineffective assistance of counsel. We disagree and affirm.

The record before us shows that the State charged Gibson, Roosevelt Vines, Carla Fabian, and Jordan Cohen with identical drug-related crimes based upon drugs found in a car occupied by all four defendants. Fabian was driving the car, Vines was in the front passenger seat, Gibson was sitting in the right rear passenger seat, and Cohen was sitting in the passenger seat behind the driver. When a police officer first talked to Fabian after pulling her over in a traffic stop, he smelled an "overwhelming odor of marijuana." The arresting officer testified that the marijuana smell was so powerful that he would find it hard to believe that anyone sitting in the car could not smell it.

When the officer searched the cargo area in the rear of the passenger compartment, he found a backpack containing 97 grams of crack cocaine, 29.1 grams of powder cocaine, 980 ecstacy pills, and 2.9 pounds of marijuana with a combined street value of $38,905. The backpack also contained: a fully-loaded 30-round .40 caliber Glock magazine; a plastic bag containing 36 rounds of .40 caliber ammunition; and a piece of paper on which Gibson had written the address of his girlfriend in Norcross, Georgia. Police found a Hi-Point 9mm semi-automatic pistol in the center console; a .40 caliber Glock on the floorboard near where Gibson's feet had been before he exited the car; and a .40 caliber Taurus located under the center armrest of the back seat.

Cohen admitted to the police officers after his arrest that the .40 caliber Taurus belonged to him. Gibson admitted during his trial testimony that he owned the Glock and the Hi-Point.

Gibson testified that he first came to Georgia from New Orleans approximately six weeks before his arrest in order to flee Hurricane

---

[1] MDMA is a Schedule I controlled substance denominated "3, 4-Methylenedioxy-methamphetamine." OCGA § 16-13-25 (3) (Z).

Katrina with his pregnant fiancée. After arriving in Georgia, Gibson lived with James Whitty, Cohen, and Vines in Hinesville, Georgia; his fiancée later left to live in Norcross, Georgia because she suspected drug transactions were taking place in the house based upon personal observations made while she lived in the home. Gibson admitted that he did not have a job or a car while he was living in Hinesville. He explained that he bought the Hi-Point 9 mm pistol in New Orleans for protection after Hurricane Ivan and that he took this gun with him from New Orleans to Georgia. He testified that he bought the Glock after he arrived in Hinesville because he discovered the Hi-Point pistol was defective.

At the time of his arrest, Gibson was driving back to Hinesville from a trip to Atlanta with Cohen, Vines, and Fabian. Cohen planned the trip, and Gibson testified that he went to visit his fiancée and sister and also to go to a firing range. He admitted that he did not see his fiancée or sister or go to the firing range on any of the three days he spent in Atlanta.

Gibson denied any knowledge of the drugs in the car and testified that he did not know how the piece of paper with his girlfriend's address got into the backpack containing the drugs. He testified that he gave the piece of paper with his girlfriend's address on it to Cohen because he planned to leave Hinesville a week later and wanted Cohen to have a way to contact him. He could not explain how the piece of paper made its way into the backpack with the drugs.

He admitted during cross-examination that when the backpack was filled with the drugs and ammunition there would be no room left over for toiletry items, shoes, or a Crown Royal bag. During direct, he testified that he did not pack his belongings (tennis shoes, toiletries, and a Crown Royal bag) in luggage for the trip to Atlanta, but instead kept them loose in the hatch compartment of the car during the drive to and from Atlanta. The arresting officer testified that he searched several other bags in the hatch compartment before finding the drugs in the backpack.

Finally, Gibson testified that Cohen admitted to a police officer on the scene that the drugs belonged to Cohen. This officer did not testify at trial, and no other police officer testified that Cohen admitted the drugs belonged to him.

Gibson asserts that his counsel was ineffective "for failing to object properly or move for a mistrial when co-defendant's counsel questioned Mr. Gibson about sentencing." In Georgia, there is a "general prohibition against evidence advising the jury about the specific sentence that might be imposed against the defendant." (Citation omitted.) *Perkins v. State*, 288 Ga. App. 802, 804 (655 SE2d 677) (2007). See also *Howard v. State*, 286 Ga. 222, 225-226 (2) (686

SE2d 764) (2009). This evidence "can be admitted only during cross-examination of a State's witness who strikes a deal with the State to avoid prison time." (Citation omitted.) *Perkins*, supra, 288 Ga. App. at 804.

The record shows that Gibson's counsel objected to the first question posed by Cohen's counsel about the potential sentence he could receive and the trial court overruled it. After Cohen's counsel asked additional questions about Gibson's potential sentences, the trial judge stopped the questioning sua sponte and excused the jury because he "wasn't sure that the recitations counsel was making were accurate in terms of the sentence." After discovering that counsel incorrectly asserted that one sentence carried a fifteen-year minimum when it was actually a five-year minimum, the trial court ruled that there could be "no more recitation of sentences, no more mandatory minimums." When Cohen's counsel asked for permission to "correct that with the jury," the trial court ruled, "You're not going to correct it. You're not going to go into it again." The trial court also denied co-defendant Fabian's motion for a mistrial based upon the introduction of evidence of a sentence when there was no evidence of a deal with the State. Gibson's counsel did not join in this motion.

When the jury returned to the courtroom after the trial judge's eight-minute conference with counsel, the trial judge instructed the jury, "All righty. I sustained the objection to the last question, and it is struck, and the jury is instructed to disregard it. All right." Neither Gibson's nor any other defendant's counsel objected to the adequacy of the trial court's curative instruction.

To prevail on an ineffective assistance claim, Gibson must establish pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) that counsel's performance was deficient as well as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

The ground for mistrial overlooked by Gibson's counsel was a violation of the general procedural rule prohibiting cross-examination into potential sentences because a jury should consider only guilt and innocence. *Perkins*, supra, 288 Ga. App. at 802; *State v. Vogleson*, 275 Ga. 637, 640-641 (2) (571 SE2d 752) (2002). Because there was no evidence of any deal between Gibson and the State, the questions seeking information about Gibson's potential sentences did not fall within the exception to the general rule created by the Supreme Court in *Vogleson*, 275 Ga. at 640 (1). The trial court's curative instruction went only to the last question posed and was

given only because Cohen's counsel overstated the minimum sentence, not because the entire line of questioning was prohibited. It therefore appears Gibson's trial counsel overlooked a ground for possible mistrial and an opportunity for a more detailed curative instruction.

This missed opportunity, standing alone, will not warrant a new trial. Gibson must also show harm — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Miller*, supra, 285 Ga. at 286. Gibson's appellate counsel argues that Gibson was harmed because the jury learned about the stiff sentences he could receive and therefore could have concluded that he had a motive to lie about his knowledge of the drugs. But, it could also be argued that the jury may have felt sympathy for Gibson based upon these same sentences and been more reluctant to convict him. Additionally, *all* of the defendants were tried together in this case for the same drug charges and were facing the same possible punishment.[2] And, any incorrect information given to the jury about the length of the potential sentences would have impacted the jury's view of the potential sentence faced by all of the defendants.

Based upon the speculative nature of any harm to Gibson arising from the jury's knowledge of sentences he was facing,[3] as well as all of the unusual facts and circumstances of this case, we conclude that Gibson cannot demonstrate a reasonable probability that the outcome would have been different if his counsel had moved for a mistrial or a more informative curative instruction.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 23, 2011.

*J. Scott Key*, for appellant.

---

[2] The trial judge sentenced all four defendants to identical terms on the drug charges.

[3] We note that the prohibition against the jury learning about sentences during the guilt and innocence phase appears to have originated with a 1970 statute that was repealed in 1974. See *Cloud v. State*, 136 Ga. App. 244 (220 SE2d 763) (1975):

> [T]he reasoning of the court in *Moore v. State*, [228] Ga. 662, [665] (187 SE2d 277), . . . to the effect: "To allow the jury to consider the various sentences for the various offenses authorized by the court's instruction before a determination of guilt would be to repeal the intent of the legislation providing for a prior determination of guilt before considering punishment in felony cases," would appear no longer to be applicable."

Id. at 246 (1).

*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., David J. Younker, Assistant District Attorneys*, for appellee.