**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**September 14, 2012**

# In the Court of Appeals of Georgia

A12A1625. FARLEY v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Stephen Andrew Farley was convicted of sale of cocaine (OCGA § 16-13-30 (b)), sale of ecstasy (OCGA § 16-13-30 (b)), and illegal use of a communication facility (OCGA § 16-13-32.3 (a)). Farley filed a motion for new trial, which the trial court denied. On appeal, Farley contends that (1) he did not knowingly and intelligently waive his right to counsel before deciding to represent himself at trial; (2) the trial court erred in admitting similar transaction evidence; and (3) his convictions must be reversed because testimony regarding his earlier withdrawn guilty plea was interjected at trial. Discerning no error, we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to

the guilty verdict." (Footnote omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

So viewed, the evidence shows that on November 17, 2008, two Georgia Bureau of Investigations ("GBI") undercover agents encountered Farley in Carrollton, Georgia. The GBI agents engaged Farley in a discussion about purchasing approximately $100 worth of crack cocaine. Although Farley did not have the crack cocaine in his possession at the time, he advised the agents that he could arrange a transaction in a few hours. After exchanging telephone numbers, the agents called Farley a short while later. Farley directed the agents to a recreation center in Carrollton and advised them that his friend, "Tramp," would arrive in a red vehicle and provide the crack cocaine. Farley and Tramp arrived at the recreation center in a red Mustang. Farley instructed one of the agents to meet with Tramp inside the Mustang to complete the cocaine sale. Tramp handed crack cocaine to the agent, and the agent gave $100 to Farley. Following the drug transaction, the agents secured the cocaine and turned it over to GBI as evidence. Subsequent tests on the drugs established that it was cocaine weighing approximately 2.38 grams.

A few weeks after this first transaction, one of the GBI undercover agents called Farley about making another drug purchase. During this second encounter,

Farley assisted the other GBI undercover agent with the purchase of ecstasy pills. The pills subsequently tested positive for the presence of N-benzylpiperazine (BZP) and 1-(3-Trifluoromethylphenyl) Piperazine (TFMPP).

On appeal, Farley challenges the following issues.

1. Farley contends that his convictions must be set aside because he did not knowingly and intelligently waive his right to counsel. We disagree.

> The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. The trial judge has the responsibility of determining whether the accused has intelligently waived his right to counsel.

(Punctuation and footnote omitted.) *Bollinger v. State*, 272 Ga. App. 688, 689 (1) (613 SE2d 209) (2005). Farley argues that the trial court and prosecutor failed to make certain inquiries before allowing Farley to represent himself, specifically referencing the six factors cited in *Banks v. State*, 260 Ga. App. 515, 519 (2) (580 SE2d 308) (2003).[1] However, the Supreme Court of Georgia has emphasized "that the

---

[1] This six-part test specifically requires the State to show, through either a trial transcript or other extrinsic evidence, that the

3

rote application of [this] six-part test . . . is not mandated, and a defendant's waiver of his right to counsel is valid if the record reflects that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Footnote omitted.) *State v. Evans*, 285 Ga. 67, 68-69 (673 SE2d 243) (2009).

Here, the record shows that approximately one week prior to his trial, Farley informed the trial court that he wanted to represent himself because he disagreed with his attorney about how to present the case. At this hearing, the trial court warned Farley that the State was represented by an experienced attorney, who would be abiding by the rules of evidence, and that the court could not relax those rules for Farley. The trial court advised Farley that an attorney could be of great assistance in a trial, in that an attorney could assist Farley in preparing for the sentencing phase of trial, preparing witnesses, cross-examining witnesses, preparing suggested jury

accused understood (1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter. Otherwise, there is no valid waiver.

(Citation and punctuation omitted.) *Banks*, supra, 260 Ga. App. at 519 (2).

4

charges, and subpoenaing witnesses to testify. Farley indicated that he understood the trial court's concerns and the consequences of representing himself. The trial court again cautioned Farley that it was important to have representation by an attorney, who could help Farley understand his right not to incriminate himself and the State's burden of proof at trial. The trial court advised Farley that while he had the right to represent himself, he needed "to weigh the consequences of that right carefully." At this same hearing, the State then proceeded to inform Farley of the charges against him, lesser included offenses, and the ranges of punishment for each offense and lesser included offense. The State advised Farley that, due to a prior drug conviction, he could be facing life imprisonment on some counts, and further that, since the various sentences could run either concurrently or consecutively, Farley was potentially facing more than one life sentence. After hearing the dangers of self-representation, Farley nevertheless decided he was going to represent himself.

At the start of Farley's trial, the trial court once again brought up Farley's decision to represent himself, inquiring into Farley's education, ability to read and write, his mental state, and whether anyone had made any threats or promises in exchange for his self-representation. The trial court questioned whether Farley understood that it was the trial judge, and not the State, that would be sentencing him,

5

and Farley responded in the affirmative. The State then proceeded to reiterate the ranges of punishment that Farley was facing for each offense, as well as the possibility of consecutive sentences, including life sentences. The trial court advised Farley that an attorney could assist in filing pretrial motions, including motions in limine, the jury selection process, making an opening statement, calling and examining witnesses, and making evidentiary objections. Farley stated that he understood and had previously witnessed these processes at trial. The trial court further reminded Farley about the disadvantages he would face, as someone not trained as an attorney, in understanding the rules of evidence and procedure, suggesting jury charges, making a closing argument, presenting mitigating evidence during the sentencing phase of the trial, and preserving for appeal errors that might occur during trial. Farley consistently stated that he understood and was familiar with each aspect of the trial. The trial court's final words of advice to Farley were to make use of an attorney during trial and to ensure that he was thoroughly aware of what he was giving up should he decide to waive his right to an attorney. Once again, however, Farley stated, on the record, that he was choosing to represent himself, and that he understood his rights during the trial. The trial court nevertheless allowed

Farley's former attorney to sit at the defense table and be available to Farley for questions and research purposes.

Given the trial court's repeated words of caution to Farley about the dangers of self-representation, repeated discussions about the benefits of having representation by a trained and experienced attorney, and Farley's repeated indications that he understood what he was undertaking, the record clearly shows that Farley's waiver of his right to counsel was made knowingly and intelligently. See *Evans*, supra, 285 Ga. at 69. Moreover, in light of the fact that Farley's former trial counsel was present to assist Farley in his self-representation, "[t]his is not a case where the defendant stood trial alone with no assistance or protection of his rights." (Footnote and punctuation omitted.) *Bollinger*, supra, 272 Ga. App. at 691-692 (1). Under these circumstances, the trial court did not err in concluding that Farley's waiver was valid.

2. Farley next contends that the trial court erred in admitting similar transaction evidence of a 1992 drug transaction. Again, we disagree.

"Before admitting similar transaction evidence[,] the trial court must hold a hearing where the [S]tate bears the burden of showing that the evidence of similar transactions is admissible under the three-prong test." (Punctuation and footnote

omitted.) *Wright v. State*, 313 Ga. App. 829, 831 (1) (a) (723 SE2d 59) (2012). Specifically, the State must show "that it is seeking to introduce the evidence for a permissible purpose; there is sufficient evidence that the accused committed the independent offense or act; and there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." (Punctuation and footnote omitted.) *Mattox v. State*, 287 Ga. App. 280, 282 (1) (651 SE2d 192) (2007). "Implicit also are the concepts that the evidence must be relevant to an issue in the case and that its probative value outweighs its prejudicial effect." (Citations and punctuation omitted.) *Morrison v. State*, 300 Ga. App. 405, 407 (685 SE2d 413) (2009).

> When reviewing the trial court's factual findings regarding whether the [S]tate satisfied the three-prong test, we apply the "clearly erroneous" standard. The decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.

(Punctuation and footnotes omitted.) *Wright*, supra, 313 Ga. App. at 831 (1) (a).

Here, the State gave its notice of intent to introduce at trial evidence that Farley sold cocaine to undercover GBI agents in 1992. Contrary to Farley's contention otherwise, the trial court did hold a similar transaction evidence hearing. During the

8

hearing, the State introduced the testimony of the GBI agent who positively identified Farley as the man who, in 1992, had sold $15 worth of crack cocaine to him while he was working undercover in Carrollton, Georgia.[2] The State explained that evidence of this 1992 hand-to-hand, street-level cocaine sale bore elements of similarity to the hand-to-hand, street-level cocaine sales at issue, and that the evidence was being proffered to demonstrate Farley's modus operandi and course of conduct in the instant case. At the conclusion of the hearing, the trial court ruled that the 1992 incidents were not too remote, were sufficiently similar to the cocaine offenses charged, and could be used for the proper purpose of showing Farley's knowledge or intent.[3]

On appeal, Farley specifically challenges the admission of the 1992 incidents on the grounds that there was an insufficient showing of similarity to the instant offenses, and because the 1992 incidents were too remote in time to be relevant.

---

[2] In addition to the GBI agent's positive identification, the State also introduced a certified copy of Farley's conviction for the 1992 drug transaction.

[3] See *Barnes v. State*, 287 Ga. 423, 426 (3) (696 SE2d 629) (2010) (noting that bent of mind, course of conduct, and intent with regard to a drug charge are all proper purposes for offering evidence of a similar transaction); *McClain v. State*, 220 Ga. App. 474, 476-477 (5) (469 SE2d 756) (1996) (noting that knowledge and intent are some of the purposes deemed proper for offering similar transaction evidence).

There is no merit to Farley's contentions. Given that the evidence established that both the 1992 and instant offenses involved Farley's hand-to-hand, street-level sale of crack cocaine to undercover GBI agents during drug investigations in the same city, the trial court did not clearly err in finding that Farley's prior drug offenses were sufficiently similar. Cf. *Morrison*, supra, 300 Ga. App. at 408 (holding that trial court was authorized to find that defendant's prior drug offenses were sufficiently similar where the evidence established that each of defendant's "offenses involved the sale of $20 worth of crack cocaine to undercover officers or informants during drug investigations in the same neighborhood in Hall County").

Moreover, the 18-year lapse of time between the prior incidents and the offenses at issue here did not require exclusion of the evidence. Given Farley's imprisonment during the period between the two incidents, the earlier incident was not too remote in time. See *Spead v. State*, 218 Ga. App. 547, 549 (1) (462 SE2d 635) (1995). Notably, only three years passed between Farley's 2005 release from prison following his 1992 drug conviction and the 2008 drug offenses at issue in this case. Cf. *Speagle v. State*, 217 Ga. App. 577, 580 (2) (458 SE2d 852) (1995) (concluding that 14-year period between the offenses did not render prior offense too remote where defendant was incarcerated for several years during that period); *Brunson v.*

10

*State*, 207 Ga. App. 523, 525 (428 SE2d 428) (1993) (holding that prior offenses were not too remote to be admissible where only 19 months passed from the date of defendant's release from prison for the prior convictions until his arrest for the current charges). "In any event, the lapse of time between the prior occurrence and the offenses charged goes to the weight and credibility of such testimony, not its admissibility." (Citations and punctuation omitted.) *Spead*, supra, 218 Ga. App. at 549 (1).

Accordingly, the trial court did not abuse its discretion in allowing the State to introduce evidence of Farley's 1992 drug transaction.

3. In his final enumeration of error, Farley contends that his convictions must be reversed because testimony regarding his earlier withdrawn guilty plea to the sale of cocaine was interjected at trial. There is no merit to Farley's claim of error.

OCGA § 17-7-93 (b) provides, in pertinent part, that "[a]t any time before judgment is pronounced, the accused person may withdraw the plea of 'guilty' and plead 'not guilty'; and the former plea shall not be admissible as evidence against him at his trial." (Punctuation omitted.) See also *Shoemake v. State*, 213 Ga. App. 528, 529 (445 SE2d 558) (1994).

Here, it was Farley himself, acting in his self-representative capacity, who interjected testimony regarding his earlier withdrawn guilty plea to the sale of cocaine. As an initial matter, we note that "one cannot complain of an alleged error that his own conduct procured or aided in causing." (Footnote omitted.) *Miller v. State*, 292 Ga. App. 641, 643 (3) (666 SE2d 35) (2008). Even to the extent Farley could complain, any such error was harmless in light of the overwhelming evidence of Farley's guilt in this case. See *Dixon v. State*, 268 Ga. App. 215, 219 (1) (b) (601 SE2d 748) (2004).

*Judgment affirmed. Ray and Branch, JJ., concur*.