[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14513

_____

Agency No. A044-849-370

KEEFE GORDON,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 24, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit
Judges.

JILL PRYOR, Circuit Judge:

Keefe Gordon, a native and citizen of Jamaica, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming an Immigration Judge's ("IJ") determination that his prior state conviction qualified as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), rendering him removable and ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3). After careful review, and with the benefit of oral argument, we deny Gordon's petition for review of the BIA's decision.

## I.     BACKGROUND

Gordon was admitted to the United States as a lawful permanent resident in 1995. Beginning about eight years later, he was convicted of various offenses in Georgia. These included convictions in 2003 for possession with intent to distribute ecstasy, in violation of O.C.G.A. § 16-13-30(b) and (d), and obstruction of a police officer, in violation of O.C.G.A. § 16-10-24(a), and convictions in 2006 for possession of cocaine, in violation of O.C.G.A. § 16-13-30(b); possession of a firearm by a felon, in violation of O.C.G.A. § 16-11-131; and theft by receipt of stolen property, in violation of O.C.G.A. § 16-8-7.

In 2017, the Department of Homeland Security ("DHS") charged Gordon as removable based on his convictions for an aggravated felony involving a drug trafficking crime, 8 U.S.C §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii); an aggravated felony involving possession of a firearm by a convicted felon, *id.*

2

§§ 1101(a)(43)(E), 1227(a)(2)(A)(iii); a controlled substance offense, *id.* § 1227(a)(2)(B)(i); a firearms offense, *id.* § 1227(a)(2)(C); and two crimes involving moral turpitude, *id.* § 1227(a)(2)(A)(ii).[1] Gordon denied the government's allegations of fact and that he had an aggravated felony and argued that he was not removable as charged. He further argued that even if he were to be found removable, he would be eligible for cancellation of removal as a lawful permanent resident under 8 U.S.C. § 1229b(a). Section 1229b(a) permits cancellation of removal for a noncitizen who has: (1) been a lawful permanent resident for at least five years, (2) "has resided in the United States continuously for 7 years after having been admitted in any status," and (3) "has not been convicted of any aggravated felony." *Id.* Because Gordon met the first two requirements of § 1229b(a), his removability turned ultimately on whether he had been convicted of an aggravated felony.

After a hearing, an IJ determined that Gordon was removable for having been convicted of an aggravated felony, specifically, his 2003 conviction for possession with intent to distribute the drug "ecstasy," because that offense was a drug trafficking crime involving a substance listed on the schedules to the federal

---

[1] Gordon was also charged as removable for having been convicted of an aggravated felony relating to a theft; however, DHS withdrew this charge.

3

Controlled Substances Act ("CSA").[2] *See id.* §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii).  The IJ acknowledged Gordon's argument that O.C.G.A. § 16-13-30 encompassed more substances than those found on the federal schedules and thus was broader than the CSA.  But the IJ concluded that he could look to Gordon's record of conviction to determine the substance that was involved. Looking to Gordon's record of conviction, the IJ found that he pled guilty to, and was convicted of, possession with intent to distribute ecstasy.

The IJ then determined that Gordon's conviction under § 16-13-30 was a drug trafficking crime and therefore an aggravated felony because ecstasy was a controlled substance under both Georgia and federal law.  Based on that determination, the IJ concluded that Gordon was removable and, because his conviction was an aggravated felony, he was ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3).  The IJ ordered him removed to Jamaica.

Gordon appealed the IJ's decision to the BIA, arguing that he had not been convicted of an aggravated felony or a controlled substance violation and that he was eligible for cancellation of removal.  The BIA disagreed.  It concluded that his 2003 conviction for possession with intent to distribute ecstasy was an aggravated

---

[2] The IJ also determined that Gordon was removable based on his prior controlled substance offenses, specifically his 2003 and 2006 convictions involving ecstasy and cocaine. *See id.* § 1227(a)(2)(B)(i).  Because the BIA addressed only whether Gordon's conviction under § 16-13-30 qualified as an aggravated felony, we do not address any of the other grounds on which the IJ found him removable. *See Imelda v. U.S. Att'y. Gen.*, 611 F.3d 724, 727 (11th Cir. 2010).

4

felony, rendering him ineligible for cancellation of removal, and dismissed his appeal.  Gordon petitioned our Court for review of the BIA's decision.

## II.    STANDARDS OF REVIEW

We review the BIA's decision alone where, as here, it did not expressly adopt the IJ's opinion or reasoning.  *Imelda v. U.S. Att'y. Gen.*, 611 F.3d 724, 727 (11th Cir. 2010).  We review questions of law, such as whether a conviction qualifies as an aggravated felony, *de novo*.  *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1176 (11th Cir. 2016).

## III.    DISCUSSION

A noncitizen convicted of "an aggravated felony" is removable.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii).  The term "aggravated felony" includes a conviction for a "drug trafficking crime," which is defined as "any felony punishable under the Controlled Substances Act."  *See id.* § 1101(a)(43)(B); 18 U.S.C. § 924(c)(2). If Gordon's conviction qualifies as an aggravated felony, he is both removable and ineligible for cancellation of removal under 8 U.S.C. § 1229b(a).  The question we must address in this appeal is whether the BIA correctly determined that Gordon's 2003 conviction under O.C.G.A. § 16-13-30 for possession with intent to distribute ecstasy qualified as a "felony punishable under the Controlled Substances Act" and thus as an aggravated felony involving a drug trafficking crime.

5

Courts analyzing whether a conviction under a state statute qualifies as an aggravated felony "apply a categorical or modified categorical approach, depending on the statutory scheme." *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013). Under the categorical approach, a court is permitted to examine only whether the "state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted).

If the state statute is broader, meaning that it does not fit entirely within the generic federal definition of a corresponding aggravated felony, a court may look to whether the state statute is "divisible." A statute is divisible if it "lists a number of alternative elements that effectively create several different crimes." *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1180 (11th Cir. 2018) (internal quotation marks omitted). A divisible statute "permit[s] the use of the modified categorical approach to uncover whether [a person's] convictions relate to a federally controlled substance." *Id*. at 1179. Under the modified categorical approach, a court may look to a small set of record documents, commonly referred to as "*Shepard* documents," to determine the elements of the defendant's offense of conviction. *See Shepard v. United States*, 544 U.S. 13, 26 (2005); *Guillen*, 910 F.3d at 1180. *Shepard* documents can consist of "a plea agreement, the transcript

6

of a plea colloquy, the charging document, jury instructions, or a comparable judicial record of this information." *Guillen*, 910 F.3d at 1180 (internal quotation marks omitted) (citing *Shepard*, 544 U.S. at 26; *Descamps v. United States*, 570 U.S. 254, 262 (2013)).

Gordon argues that his offense involving ecstasy does not qualify as an aggravated felony because § 16-13-30 is broader than the federal CSA and is indivisible. Therefore, he argues, we cannot look to his record of conviction to determine what substance the conviction involved. He further argues that even if we could look to his record of conviction, it reveals that he possessed ecstasy, which is not a federally controlled substance. We discuss each of Gordon's arguments in turn.

## A.    Georgia Statute § 16-13-30(b) Is Divisible.

The parties agree that § 16-13-30 encompasses substances that are not included on the schedules to the CSA; therefore, not all convictions under the Georgia statute categorically constitute aggravated felonies involving drug trafficking crimes. *See Descamps*, 570 U.S. at 261. We agree with the parties. To determine whether Gordon's statute of conviction qualifies as an aggravated felony, then, we must first evaluate whether the statute is divisible.

Gordon argues that § 16-13-30's list of controlled substances in its Schedules I and II are means of committing the offense rather than different

7

elements and therefore the statute is indivisible as to the identity of the controlled substance.  Georgia case law, however, indicates that the controlled substance is an element of the offense, rendering § 16-13-30 divisible.

It is "easy" to determine whether a statute sets forth alternative elements or means where "the statute on its face" resolves the issue or "a state court decision definitively answers the question." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).  In *Guillen*, we analyzed whether a Florida statute that contained a list of controlled substances, like the Georgia statute here, set forth alternative elements or means.  *Guillen*, 910 F.3d at 1179-84.  We looked to Florida case law because, as is also true here, "the statute on its face fail[ed] to provide a clear answer on divisibility." *Id.* at 1181-82.  We held that Florida case law implied that the statute was divisible because it permitted a defendant to be convicted of "both possession of marijuana and possession of a hallucinogenic drug, even though the offenses were merely different facets of the same transaction." *Id.* at 1182 (internal quotation marks omitted).

The same is true of Georgia case law's treatment of § 16-13-30(b) and (d).  Section 16-13-30(b) makes it unlawful "for any person to . . . possess with intent to distribute any controlled substance." O.C.G.A. § 16-13-30(b).  Subsection (d) provides that "any person who violates subsection (b) of this Code section with respect to a controlled substance in Schedule I or Schedule II shall be guilty of a

8

felony." *Id.* § 16-13-30(d).  In *Tabb v. State*, the Georgia Supreme Court held that Georgia could charge and convict a defendant in separate counts for simultaneous possession of three different Schedule II controlled substances.  297 S.E.2d 227, 230 (Ga. 1982).  The Court expressly rejected Tabb's contention that the illegal possession of several controlled substances amounted to a single offense.  *Id.* Analyzing the language of the statute and Georgia law, the Georgia Supreme Court determined that "simultaneous possession of each of the controlled substances listed in Schedule II . . . is a separate offense for which the legislature meant to impose punishment."  *Id.*  Where the state's highest court "has told us that the elements of possession of [several controlled substances] are different, it has implicitly told us that the identity of the substance possessed is an element of possession."  *Guillen*, 910 F.3d at 1182.

Because the Georgia Supreme Court has told us that possession of each of the "controlled substances listed . . . is a separate offense," that settles the matter: the identity of the controlled substances in § 16-13-30 is an element of the offenses criminalized in that statute.  *Tabb*, 297 S.E.2d at 230; *see Guillen*, 910 F.3d at 1182.  We therefore conclude that § 16-13-30 is divisible, and the modified categorical approach applies.

**B.    The BIA Did Not Err in Determining that Ecstasy Is a Federally Controlled Substance Under Georgia Law.**

9

We now apply the modified categorical approach to determine whether Gordon's conviction under § 16-13-30 qualifies as an aggravated felony involving a drug trafficking crime. Under the modified categorical approach, we identify the substance Gordon was convicted of possessing and then evaluate whether that substance corresponds with a federally controlled substance. *See Guillen*, 910 F.3d at 1185.

Gordon's indictment reveals that the substance he was convicted of possessing with the intent to distribute was "ecstasy." AR. at 666-68, 675[3]; *see Shepard*, 544 U.S. at 26. Gordon does not disagree that his conviction involved ecstasy. Instead he contends that because ecstasy is not listed in either the Georgia or federal controlled substances schedules, and the *Shepard* documents do not reveal the chemical substances that made up the ecstasy he possessed, the drug is not a controlled substance under the CSA. Therefore, he argues, he was not convicted of a "felony punishable under" the CSA. 8 U.S.C. § 1101(a)(43)(B); 18 U.S.C. § 924(c)(2).

The CSA defines the term "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Ecstasy is not included in the federal controlled substance schedules; however, 3, 4-methylenedioxymethamphetamine

---

[3] Citations to "AR" refer to the administrative record in Gordon's removal proceedings.

("MDMA") is listed.  *See* 21 C.F.R. § 1308.11(d)(11).  The government argues that because Georgia law refers to MDMA as ecstasy, Gordon was convicted of possessing with the intent to distribute MDMA, a federally controlled substance.

We agree that Georgia case law indicates that Georgia courts refer to MDMA as ecstasy.  For example, in *Cooper v. State*, Cooper was charged for the possession of N-Benzylpiperazine, commonly known as BZP, a Schedule I controlled substance in Georgia.  728 S.E.2d 289, 290 (Ga. Ct. App. 2012).  Cooper argued that the State's evidence against him was insufficient because he did not knowingly possess BZP but possessed "a different Schedule I controlled substance, ecstasy."  *Id.* at 291.  The court rejected the argument because Cooper's knowledge was a question for the jury, and the jury could have inferred from circumstantial evidence that he knew he possessed the chemical compound BZP, not ecstasy.  *Id.*  In its analysis of Cooper's argument, the court recognized that "*MDMA or ecstasy* is a Schedule I controlled substance denominated 3, 4–Methylenedioxymethamphetamine."  *Id.* at 291 n.2 (emphasis added) (internal quotation marks omitted).  *Cooper* suggests that Georgia courts refer to MDMA, and not other controlled substances, as ecstasy.

Other cases support the conclusion that in Georgia ecstasy refers to MDMA.  *See Jackson v. State*, 724 S.E.2d 9, 11 (Ga. Ct. App. 2012) (recounting that two defendants were "convicted of trafficking in 3, 4–

11

methylenedioxymethamphetamine ('MDMA' or 'ecsta[s]y')"); *Gibson v. State*, 706 S.E.2d 585, 585-86 & n.1 (Ga. Ct. App. 2011) (noting that the defendant was convicted of "trafficking in MDMA ('ecsta[s]y')"); *Taylor v. State*, 702 S.E.2d 28, 28-29 (Ga. Ct. App. 2010) (explaining that the defendant "was convicted of possession of MDMA ('Ecstasy') (footnote omitted)); *Vines v. State*, 675 S.E.2d 260, 262 n.1 (Ga. Ct. App. 2009) ("MDMA is an abbreviation for 3, 4-Methylenedioxymethamphetamine and is commonly known as 'Ecstasy.'").

Relying on *Farley v. State*, 732 S.E.2d 131 (Ga. Ct. App. 2012), Gordon argues that Georgia also treats other chemicals besides MDMA as ecstasy and therefore ecstasy does not necessarily refer to MDMA. In *Farley*, the defendant was charged and convicted of, among other offenses, the sale of ecstasy. *Id.* at 132. The court noted that the ecstasy pills Farley sold tested positive for "the presence of N-benzylpiperazine (BZP) and 1–(3–trifluoromethylphenyl) piperazine (TFMPP)." *Id.* at 133. We are unpersuaded by Gordon's argument that *Farley* leads us to a different conclusion regarding whether ecstasy was a federally controlled substance.

Although the pills at issue in *Farley* were charged as ecstasy but contained BZP and TFMPP, at the time of Gordon's conviction those two substances were listed on the federal controlled substances schedules. *See* 21 C.F.R. § 1308.11(g)(3)-(4) (2003). BZP and TFMPP were added to the federal schedules

specifically because when combined they imitate the effects of MDMA and are sold as such. *See* Schedules of Controlled Substances; Placement of 2,5-Dimethoxy-4-(n)-propylthiophenethylamine and N-Benzylpiperazine Into Schedule I of the Controlled Substances Act, 69 Fed. Reg. 12,794, 12,795 (Mar. 18, 2004). Thus, even if we accepted that in Georgia ecstasy could refer to BZP and TFMPP—meaning that Gordon's conviction for possessing with the intent to distribute ecstasy could have involved these controlled substances instead of MDMA—Gordon's conviction would nonetheless qualify as an aggravated felony.[4] 21 C.F.R. § 1308.11(g)(3)-(4) (2003).

Because the controlled substances at issue in *Farley* were nonetheless federally controlled substances, we reject Gordon's argument that *Farley* means he could have been convicted of possessing with the intent to distribute a substance not listed on the federal controlled substances schedules. We thus conclude that Gordon's conviction under § 16-16-30 qualifies as a felony punishable under the CSA. The BIA therefore correctly determined that he was removable and

---

[4] Gordon argues that we must compare his conviction with the federal controlled substances schedules in effect at the time of his removal proceedings rather than those in effect at the time of his conviction. He is incorrect. In assessing whether a noncitizen's conviction qualifies as an aggravated felony, we compare his offense of conviction to the CSA schedules in effect when he was convicted. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1988 (2015) (comparing the state controlled substance schedules with the federal schedules in place "[a]t the time of Mellouli's conviction"); *see also Collymore v. Lynch*, 828 F.3d 139, 142 n.4 (2d Cir. 2016) (noting that the court's references to the federal controlled substance schedules concern the "version of the federal drug schedules in effect at the time of Collymore's conviction").

13

ineligible for cancellation of removal based on an aggravated felony for a drug trafficking crime. *See* 8 U.S.C. §§ 1101(a)(43)(B), 1229b(a)(3); 18 U.S.C. § 924(c)(2).

**PETITION DENIED.**