[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12247

_____

Agency No. A077-020-040


RAMON DURAN GUILLEN,

                                                              Petitioner,


versus


U.S. ATTORNEY GENERAL,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 13, 2018)

Before MARCUS, NEWSOM, and EBEL,* Circuit Judges.

MARCUS, Circuit Judge:

_____

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by
designation.

An alien convicted of a state offense "relating to a controlled substance" as defined by federal law is eligible to be removed from the United States.  8 U.S.C. § 1227(a)(2)(B)(i).  This case presents the issue whether a conviction for cocaine possession under Fla. Stat. § 893.13(6)(a) counts as a conviction of an offense "relating to a controlled substance" under this provision.  Petitioner Ramon Duran Guillen argues that it does not, on the ground that the Florida statute is indivisible and applies to some substances that fall outside the federal definition of a controlled substance.  We hold that Fla. Stat. § 893.13(6)(a) is divisible by the identity of the drug possessed, permitting the use of the modified categorical approach to determine what substance was involved in a particular offense.  Because the record documents unambiguously reveal that Guillen's convictions involved cocaine, a federally controlled substance, we deny the petition for review.

**I.**

The relevant facts are undisputed.  Ramon Duran Guillen was born on July 2, 1984, in Mexico.  He testified before an Immigration Judge (IJ) that he entered the United States illegally in 1991, later becoming a lawful permanent resident in 1999.  His parents and four of his five siblings are also permanent residents, while his youngest sister was born in the United States and is an American.  Guillen has lived with his parents and teenage sister in Sarasota, Florida, since 2014.  He is unmarried and has no children.

Guillen's criminal history consists of five incidents, all of which involved cocaine. In 2011, Guillen was first arrested for possession of cocaine under Fla. Stat. § 893.13(6)(a) as well as possession of a small quantity of marijuana. Guillen pleaded nolo contendere and was sentenced to thirty days in jail. Next, in 2014 Guillen was arrested on four counts including cocaine possession, property damage, possession of narcotic equipment, and resisting an officer. Guillen testified that the property damage and resistance occurred after he was arrested and sent to a hospital because of a suspected cocaine overdose. He again pleaded nolo contendere and received a four-month sentence. In 2015, Guillen pleaded nolo contendere to possession of cocaine, possession of more than 20 grams of marijuana, driving under the influence, and fleeing or attempting to elude a police officer. He received a nine-month sentence. Later that year, Guillen was arrested for vehicle theft, another count of cocaine possession, and possession of a small amount of marijuana. Guillen again pleaded nolo contendere, later testifying before the IJ that he had stolen a vehicle from a friend's mechanic shop while under the influence of marijuana and cocaine.

Most recently, in November 2015 Guillen was arrested for cocaine possession, leaving the scene of an accident, driving under the influence, driving with a suspended license, and possession of narcotics equipment. An officer testified that his radar recorded Guillen, while high on cocaine and marijuana,

3

traveling at 102 miles per hour before his arrest.  He once more pleaded nolo contendere, and the next year, DHS officers encountered Guillen at a probation office in Sarasota, Florida, during "routine screening of foreign-born offenders under supervision of the Florida Department of Corrections."  At this time he was identified as an alien eligible to be removed from the United States.

The government filed a Notice to Appear charging Guillen as removable because he was convicted of a state offense "relating to a controlled substance" as defined by federal law.  8 U.S.C. § 1227(a)(2)(B)(i).  Guillen filed an application for cancellation of removal under 8 U.S.C. § 1229b(a).  This section permits the government to cancel a removal order for an alien who 1) was "lawfully admitted for permanent residence" for at least five years; 2) "has resided in the United States continuously" for seven years; and 3) has no "aggravated felony" convictions.  If these requirements are met, an alien is only made eligible for cancellation of removal -- the decision to grant relief is committed to the discretion of the Immigration Judge.

The IJ found that Guillen met the statutory requirements.  He was granted lawful permanent resident status in 2000, and he lawfully resided in the United States since that time.  And despite his criminal record, Guillen had never been convicted of an aggravated felony under the immigration law definition.  See 8 U.S.C. § 1101(a)(43).  Still, the Immigration Judge concluded that Guillen did not

4

merit cancellation of removal as a matter of discretion.  The standard for this determination is whether "on balance, the totality of the evidence before [the IJ] indicates that the respondent has adequately demonstrated that he [or she] warrants a favorable exercise of discretion."  Matter of A- M-, 25 I. & N. Dec. 66, 76 (BIA 2009) (second alteration in original) (internal quotation marks omitted).

The IJ recognized Guillen's family ties in the United States, the support he provides to his parents and youngest sister, and his continued residence in the United States since he was seven years old.  But these positive equities were outweighed by his extensive series of criminal offenses, several instances of apparent dishonesty on income tax filings, and the likelihood that he would reoffend given his drug problem.  At bottom, "the seriousness of his criminal convictions and his lack of rehabilitation" made his claim for relief unsuccessful. The IJ therefore denied Guillen's application and ordered his removal to Mexico.

Guillen appealed the denial of his application for cancellation of removal to the Board of Immigration Appeals.  Before the Board, Guillen continued to press his claim for discretionary relief and added a legal argument.  Guillen claimed that he was ineligible for removal because none of his convictions qualified under § 1227(a)(2)(B)(i) as a conviction relating to a controlled substance.  Guillen contended that a conviction under Fla. Stat. § 893.13(6)(a) is not categorically related to a controlled substance because the state controlled substance schedules

5

included a number of substances that were not listed in the federal schedules. Thenylfentanyl, 1,4–butanediol, and trenbolone acetate are three examples of substances that are considered controlled substances under Florida law, but not federal law. [1]  Compare Fla. Stat. § 893.03 with 21 U.S.C. § 812 and 21 C.F.R. § 1308 (2018).  He further argued that the statute was not divisible, preventing a closer look at record documents to determine what substances were involved in his offenses.

The Board rejected Guillen's argument.  Relying on Matter of Ferreira, 26 I&N Dec. 415 (BIA 2014), the Board held that merely pointing to differences in the substances covered by Florida law and the federal controlled substance schedules was insufficient.  Rather, one must show that there is "a realistic probability that the state will successfully prosecute conduct outside the removable offense's generic definition" to establish that the state offense does not render an alien removable.  The Board also rejected Guillen's argument that § 893.13(6)(a) is overbroad because it covers both "actual or constructive possession" of a

---

[1] Guillen pointed to alpha-ethyltryptamine, fenethylline, parahexyl, amobarbital, pentobarbital, secobarbital, benzphetamine, and phendimetrazine.  Each of these substances is included in the federal controlled substance schedules published in the Code of Federal Regulations pursuant to the Attorney General's authority to add substances to the initial schedules published in § 812. See 21 C.F.R. §§ 1308.11–1308.13 (2018); 21 U.S.C. § 811(a)(1).  Guillen's point stands, however, because there are other substances listed in the Florida controlled substance schedules that are not covered by federal law.

controlled substance.[2]  The well-established rule is that federal drug laws likewise cover constructive possession.  See, e.g., United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996).  Still, the Board assumed for the sake of argument that Guillen was correct that a Florida possession conviction is not categorically related to a controlled substance.

More significantly, in as much as this is the ground on which the government now defends the BIA's decision, the Board held that the Florida possession statute was divisible.  The Board relied on the structure of the statute, which "enumerates alternative bases for conviction separated by the disjunctive 'or,'" and cited a Florida District Court of Appeal holding that the specific drug possessed is an element of the offense under § 893.13(6)(a).  See R.C.R. v. State, 174 So. 3d 460, 462 (Fla. Dist. Ct. App. 2015).  And last, the Board noted that the standard jury instructions for cocaine possession under this section require a jury to find "that the substance was cocaine."  The Board therefore concluded that the statute was divisible by the identity of the substance possessed, permitting the use of the modified categorical approach.  The Board found sufficient evidence in the records of Guillen's convictions to establish that his convictions under the Florida statute were for possession of cocaine, qualifying him for removal.  The Board did not reach his convictions for marijuana possession or possession of narcotics

---

[2] Guillen now claims the Board "misunderstood" his argument on this point and he has abandoned the argument on appeal.

equipment, because Guillen's cocaine possession convictions were sufficient to establish his eligibility for removal.

The Board then reviewed the Immigration Judge's discretionary denial of Guillen's application. Examining the same set of facts, the Board agreed that his criminal history and lack of demonstrated rehabilitation outweighed the equities favoring cancellation of removal. The Board dismissed the appeal and Guillen timely petitioned this Court for review.

## II.

We are obliged, as a threshold matter, to ensure that we have jurisdiction. Courts generally lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) [of Title 8]," which includes controlled substance offenses. 8 U.S.C. § 1252(a)(2)(C). We also lack jurisdiction over the discretionary denial of an application for cancellation of removal. Id. § 1252(a)(2)(B)(i). We have jurisdiction, however, to review a "question[] of law" properly raised in a petition for review. Id. § 1252(a)(2)(D).

The government "has the burden of establishing by clear and convincing evidence" that an alien is eligible for removal. 8 U.S.C. § 1229a(c)(3)(A). Our review is confined to the Board's decision, "except to the extent that it 'expressly adopt[s] the IJ's opinion or reasoning.'" Cole v. U.S. Att'y Gen., 712 F.3d 517,

8

523 (11th Cir. 2013) (quoting Imelda v. U.S. Att'y Gen., 611 F.3d 724, 727 (11th

Cir. 2010)).  We review legal questions de novo.  Id. at 523.  Although we defer to

the Board's interpretation of ambiguous terms in the Immigration and Nationality

Act, no deference is owed to its construction of a state statute.  Ramos v. U.S.

Att'y Gen., 709 F.3d 1066, 1069 n.2 (11th Cir. 2013).

## III.

Guillen argues that he is not removable under § 1227(a)(2)(B)(i) because

none of his convictions relate to a controlled substance under federal law.  The

government does not dispute Guillen's claim that a conviction pursuant to Fla.

Stat. § 893.13(6)(a) is not categorically related to a controlled substance.  The

Florida controlled substance schedules undeniably are broader than the definition

of "controlled substance" under federal law.  The disagreement instead centers on

whether the Florida statute is divisible, which would permit the use of the modified

categorical approach to uncover whether Guillen's convictions relate to a federally

controlled substance.  We hold that the Board was correct in concluding that the

statute is divisible and in finding that Guillen's convictions for possession of

cocaine relate to a controlled substance as defined by federal law.

### A.

In relevant part, 8 U.S.C. § 1227(a)(2)(B)(i) provides: "Any alien who at any

time after admission has been convicted of a violation of (or a conspiracy or

attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of title 21) . . . is deportable." Section 802 in turn defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Cocaine is a Schedule II controlled substance. Id. §812(c), sched. II (a)(4).

Like the federal Controlled Substances Act, 21 U.S.C. § 841(a)(1), and the laws of many states, the Florida statute defining the offense of possession uses the general term "controlled substance." Currently, as well as at the time of Guillen's 2014 and 2016 convictions,[3] it reads this way:

> A person may not be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. A person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 893.13(6)(a). "Controlled substance" is separately defined by § 893.02(4), by reference to schedules provided in § 893.03.

To determine whether a state offense makes an individual eligible for removal, we "apply a categorical or modified categorical approach, depending on

---

[3] The statute received slight stylistic amendments during the timespan covering his convictions that have no effect on the issue in this case.

the statutory scheme." Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1280 (11th Cir. 2013). Under the categorical approach, we consider only "the fact of conviction and the statutory definition of the offense." Id. "If the statute can be violated by an act that does not fit within the generic offense," then the statute cannot be a predicate for removal regardless of the facts of the particular case. Spaho v. U.S. Att'y Gen., 837 F.3d 1172, 1177 (11th Cir. 2016) (citing Descamps v. United States, 570 U.S. 254, 257 (2013)). The government does not assert that a conviction under Fla. Stat. § 893.13(6)(a) categorically relates to a controlled substance, since the Florida possession statute can be violated by conduct that does not involve a federally controlled substance.

The modified categorical approach applies when a statute is "divisible," that is, "when it lists a number of alternative elements that effectively create several different crimes." Donawa, 735 F.3d at 1281. For divisible statutes, a court can look to a small set of record documents to determine the specific elements of the offense that the defendant was convicted of. See Shepard v. United States, 544 U.S. 13, 26 (2005); Spaho, 837 F.3d at 1177. These so-called "Shepard documents" can consist of a plea agreement, the transcript of a plea colloquy, the charging document, jury instructions, or a "comparable judicial record of this information." Shepard, 544 U.S. at 26; Descamps, 570 U.S. at 261–62.

11

So, to decide whether Guillen's cocaine convictions render him removable we must decide whether Fla. Stat. § 893.13(6)(a) is divisible. This requires us to determine whether the list of controlled substances sets forth alternative elements -- thereby effectively creating a distinct offense for the possession of each substance -- or just various factual means of committing a single offense. This is because an alien is removable under § 1227(a)(2)(B)(i) only when "the elements that make up the state crime of conviction relate to a federally controlled substance." Mellouli v. Lynch, 135 S. Ct. 1980, 1990 (2015) (emphasis added). "Elements are the 'constituent parts' of a crime's legal definition -- the things the 'prosecution must prove to sustain a conviction.'" Mathis v. United States, 136 S. Ct. 2243, 2248 (2016) (some quotation marks omitted) (quoting Black's Law Dictionary 634 (10th ed. 2014)). Factual means, on the other hand, are "mere real-world things," of no legal consequence, that need not be proven or admitted to obtain a conviction. Id.

In Mathis v. United States -- the Supreme Court's most recent exploration of the divisibility of a state statute -- the issue was whether convictions for burglary under Iowa law qualified as "generic" burglary for the purposes of an Armed Career Criminal Act sentencing enhancement. See id. at 2248; 18 U.S.C. § 924(e). The parties agreed that the Iowa statute was overbroad: it covered entry into "any building, structure [or] land, water, or air vehicle," whereas generic burglary

12

applies only to entry into a building or other structure. Id. at 2250 (emphasis omitted) (quoting Iowa Code § 702.12). This meant that the Iowa statute was not a categorical match for generic burglary. The District Court and the Eighth Circuit had used the modified categorical approach and looked to the record of Mathis's convictions to determine that his offenses involved entry into a structure, not entry into a vehicle, and therefore qualified as "generic burglary." Id. at 2250–51. The Supreme Court reversed because "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense," id. at 2251, and the Iowa Supreme Court had already held that the listed items were merely "alternative ways of satisfying a single locational element," id. at 2250. Because "building, structure [or] land, water, or air vehicle" lists means of fulfilling a single element, the sentencing court could not move past the categorical approach and examine the conviction records. Id. at 2251.

The Supreme Court explained that the critical "elements or means" question is "easy" in two instances: when "the statute on its face" provides an answer, and when "a state court decision definitively answers the question" as it did in Mathis. Id. at 2256. A statute might provide a clear answer by setting different punishments depending on the chosen alternative, or by making clear that a list contains only "illustrative examples." Id. The Court added that if the statute and authoritative sources of state law are unclear, a court is permitted to "peek at the

record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 2256–57 (brackets omitted) (quoting Rendon v. Holder, 782 F.3d 466, 473–474 (9th Cir. 2015) (dissenting from denial of reh'g en banc)).

B.

Following the framework set forth in Mathis, we look to the face of the statute, state court decisions, and other authoritative sources of state law to determine whether the identity of the controlled substance is an element of a possession offense under the Florida statute.

We begin with the text. Here, the statute on its face fails to provide a clear answer on divisibility. In terms of structure, Fla. Stat. § 893.13(6)(a) is unlike the usual examples of alternatively phrased statutes. The Supreme Court in Mathis described two hypothetical statutes that would fall clearly on either side of the line. First, suppose a burglary statute "prohibited 'the lawful entry or the unlawful entry' of a premises with intent to steal," with different punishments depending on which of the two was found by the jury. Mathis, 136 S. Ct. at 2249. This statute is divisible, because whether the entry was unlawful would "necessarily [be] found or admitted" at the time of conviction. Id. A later court considering whether a conviction qualified as a generic burglary offense would easily be able to discern the basis of the conviction from Shepard documents. Conversely, consider a

14

statute creating an offense with the use of a "deadly weapon" as an element that provided that "a 'knife, gun, bat, or similar weapon' would all qualify." Id. Because that list merely "specifies diverse means of satisfying a single element of a single crime," a jury would not be required to agree on the identity of the weapon. Id. So long as all jurors agreed it was a "deadly weapon," they could find that element to be satisfied. This kind of statute is indivisible.

The statute in this case is unlike either of these hypothetical laws with a structure that leads to a single inescapable conclusion. Fla. Stat. § 893.13(6)(a) uses a general term that is defined by a lengthy list provided in another section of the Florida code. This reveals little about whether the listed substances are alternative elements, one of which must be established to make out a conviction, or merely various factual means that satisfy a single "controlled substance" element. The plain text appears to be compatible with either conclusion, so we must look elsewhere.

Florida's state courts provide substantially more guidance. State courts "are the ultimate expositors of state law," so we are bound by their opinions on state law issues. Jones v. GDCP Warden, 753 F.3d 1171, 1191 (11th Cir. 2014). In Jenkins v. Wainwright, 322 So. 2d 477 (Fla. 1975), the Florida Supreme Court held that a defendant could be convicted of both possession of marijuana and possession of a hallucinogenic drug, even though the offenses were "merely

15

different facets of the same transaction." Id. at 478.  The court rejected the defendant's double jeopardy challenge, holding that the defendant was guilty of "possession of two separate drug substances, each of which constitutes in and of itself a separate violation of law."  Id. at 479.

Although the Florida Supreme Court did not use the word "divisibility" or refer to the "modified categorical approach," its holding necessarily implies that the statute is divisible: a defendant cannot be convicted and sentenced for two offenses with identical elements arising from the same facts.  See, e.g., United States v. Dixon, 509 U.S. 688, 696 (1993) ("The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution.").  In Jenkins, the only possible difference between the two offenses was the identity of the substance.  Possession of marijuana and possession of a hallucinogenic drug consist of otherwise identical elements.  In short, because the Florida Supreme Court has told us that the elements of possession of marijuana and possession of a hallucinogen are different, it has implicitly told us that the identity of the substance possessed is an element of possession.

Florida's intermediate appellate courts have repeatedly come to the same conclusion.  Thus, for example, in Parker v. State, 237 So. 2d 253, 254 (Fla. Dist.

16

Ct. App. 1970), the First District Court of Appeal upheld a three-count conviction for possession of marijuana, possession of a barbiturate, and delivery of a barbiturate. Id. at 253–54. The court rejected the defendant's argument that "there was only one crime committed" when he sold the two drugs, holding that "there were actually three separate and distinct violations of law." Id. at 254. In Mills v. State, 323 So. 2d 594 (Fla. Dist. Ct. App. 1975), the First District affirmed separate sentencing for convictions of possession of marijuana, possession of a barbiturate, and possession of heroin on the same ground. Id. at 595. And in Emmett v. State, 764 So. 2d 675 (Fla. Dist. Ct. App. 2000), the Second District Court of Appeal upheld consecutive sentences for a robbery conviction and eight counts of possession of different controlled substances. Id. at 675. The court noted that the sentence may have been "excessive" -- five years for each of the possession convictions, on top of fifteen for robbery -- but held that "[u]nder Florida law, [the] sentences are legal." Id. at 675–76. Citing Jenkins, the court approved the trial court's conclusion "that possession of eight different controlled substances constituted eight separate offenses." Id. at 675.

And providing perhaps even more probative evidence, in Retherford v. State, 386 So. 2d 881, 882 (Fla. Dist. Ct. App. 1980), the First District Court of Appeal rejected separate sentencing for possession of marijuana and possession of hashish. The reason for this ruling was that marijuana and hashish were defined as the same

17

controlled substance under Florida law.  Possession of the same substance in different forms is "the same crime," whereas possession of two different substances is not.  Id. at 882.  This is a clear enough indication that Florida's courts consider the identity of the particular substance to be an element of possession.  Otherwise, there would be no reason to treat possession of marijuana and hashish any different from possession of marijuana and a hallucinogen.

In still another line of cases, Florida's District Courts of Appeal have overturned convictions because the substance named in the charging document differed from the one shown to have been involved in the offense.  Thus, for example, in Jiminez v. State, 231 So. 2d 26 (Fla. Dist. Ct. App. 1970), the Third District held that charging a defendant with a heroin offense and producing evidence relating to morphine was a "fatal variance" requiring reversal.  Id. at 28.  The court explained that "the accused cannot be indicted for one offense and convicted and sentenced for another, even though the offenses are closely related and of the same general nature or character and punishable by the same grade of punishment."  Id. at 27 (emphasis added) (internal quotation marks omitted) (quoting Penny v. State, 191 So. 190, 193 (Fla. 1939)).

The standard jury instructions issued by the Florida Supreme Court reflect the same understanding of the statute.  While these instructions are not binding authority, they "are presumed to be correct" interpretations of Florida law.

18

BellSouth Telecomms., Inc. v. Meeks, 863 So. 2d 287, 292 (Fla. 2003).  In

pertinent part, the standard instructions for a possession of controlled substances

charge state:

> Certain drugs and chemical substances are by law known as
> "controlled substances."  (Specific substance) is a controlled
> substance.

> To prove the crime of Possession of a Controlled Substance, the State
> must prove the following two elements beyond a reasonable doubt:

> 1.      (Defendant) possessed a substance.

> 2.      The substance was (specific substance).

Fla. Standard Jury Instr. (Crim.) 25.7 (2018).  Notably, in two separate places --

including in what "the State must prove . . . beyond a reasonable doubt" -- a

specific substance must be written into the instructions.  Id.; see also Mathis, 136

S. Ct. at 2248 ("Elements are . . . the things the prosecution must prove to sustain a

conviction." (quotation marks omitted)).  The instructions have been cited by the

District Courts of Appeal as "set[ting] out the three elements that must be proven

to establish possession of cocaine under section 893.13(6)(a)."  Meme v. State, 72

So. 3d 254, 256 (Fla. Dist. Ct. App. 2011).  Even if the instructions are not binding

authority in the state system, the federal courts are not in the business of overruling

official interpretations of state law issued by a state supreme court.  These

instructions are an "authoritative source[] of state law" for the purposes of

determining the divisibility of a statute, and they lead to only one possible

19

conclusion.  Mathis, 136 S. Ct. at 2256.  And again, Mathis tells us that when state law provides a definitive answer, the divisibility inquiry is a straightforward one.

## C.

Our conclusion is consonant with those reached by nearly all of our sister circuits that have addressed this question with respect to similar state statutes. Thus, by example, the First Circuit has held that a Rhode Island conviction for manufacturing, delivering, or possessing with intent to distribute a controlled substance rendered an alien removable under § 1227(a)(2)(B)(i).  See Swaby v. Yates, 847 F.3d 62, 68 (1st Cir. 2017).  The petitioner there made a challenge to his removal just like Guillen's, claiming that the overbreadth of the Rhode Island statute meant that it could not be a predicate for his removal even though his crime involved marijuana.  Like the Florida statute, the relevant Rhode Island provision uses only the generic phrase "controlled substance," which is defined elsewhere. See R.I. Gen. Laws § 21-8-4.01(a)(1).  To determine whether the statute was divisible, the First Circuit looked to state court decisions, which "expressly described the particular type of controlled substance listed in the state drug schedules as an element."  Swaby, 847 F.3d at 67.  It quoted the Rhode Island Supreme Court's statement that "[u]nlawful possession of more than one controlled substance constitutes a separate offense for each such substance possessed."  Id. at 68 n.3 (quoting State v. Feng, 421 A.2d 1258, 1271 (R.I. 1980)).

20

And it noted that the charging documents for the petitioner's convictions identified a specific controlled substance, as they do here.  Id. at 68.

The First Circuit's conclusion is no outlier.  In United States v. Henderson, 841 F.3d 623 (3d Cir. 2016), cert. denied, 138 S. Ct. 210 (2017), the Third Circuit held that a Pennsylvania controlled substance statute was divisible.  Id. at 626.  The court adhered to the Superior Court of Pennsylvania's holding that the particular substance was an element of the offense, id. at 629, and found that the statutory structure also compelled finding the statute divisible, id. at 630.  The Eighth Circuit reached the same result regarding Missouri's possession with intent to deliver statute, relying on two Missouri Court of Appeals decisions rejecting challenges to multiple convictions and separate sentences for offenses involving multiple drugs.  See Martinez v. Sessions, 893 F.3d 1067, 1071 (8th Cir. 2018).  The Fifth and Ninth Circuits have done likewise with respect to two California possession of a controlled substance laws.  United States v. Gomez-Alvarez, 781 F.3d 787, 792 (5th Cir. 2015); Coronado v. Holder, 759 F.3d 977, 984–85 (9th Cir. 2014).  While these cases involved different statutes than the Florida provision relevant here, the controlled substance laws at issue have more similarities than differences.  Each statute sets out a prohibition on a type of conduct, like possession or sale, using the general term "controlled substance" that is defined

21

elsewhere.  These decisions from our sister circuits therefore properly inform our analysis of the similarly structured Fla. Stat. § 893.13(6)(a).

The sole exception we can find is Harbin v. Sessions, 860 F.3d 58, 61 (2d Cir. 2017), where the Second Circuit held that New York's possession with intent to deliver statute was indivisible.  Beyond the obvious distinction that this case involved a different statute from a different state, we note that the state courts' guidance looked much different from that available to us here.  The Second Circuit drew from New York precedent on a related statute that applied to the possession of narcotics.  See N.Y. Penal Law § 220.16 (McKinney).  New York courts have held that "different narcotic drugs do not create separate crimes under this statute," even going so far as to state that "jurors need not agree as to the particular narcotic drug in question" to sustain a conviction.  Id. at 67.  This is in sharp contrast to the decisions of the Florida Supreme Court and the District Courts of Appeal recounted above.

Moreover, New York courts have also reached the opposite conclusion with respect to offenses involving multiple drugs, with one court holding that a defendant cannot be "convicted of two possession counts based on his possession of a single bag containing both cocaine and heroin."  People v. Miller, 789 N.Y.S.2d 423 (N.Y. App. Div. 2005).  New York thus appears to treat all narcotics the same, as Florida law does with marijuana and hashish, which gave rise to the

22

Second Circuit's conclusion that the identity of the substance is not an element of the offense under the statute at issue. All of this is to say that the state court materials available to the Second Circuit were vastly different from the evidence of Florida law produced here. On the basis of the state law precedent relevant to this case, we conclude that Fla. Stat. § 893.13(6)(a) is divisible.

D.

Because Fla. Stat. § 893.13(6)(a) is divisible, the modified categorical approach applies. We must first identify which of the alternative elements Guillen was convicted of, then discern whether those elements imply that the offense is related to a controlled substance under federal law. Again, our review is limited, looking only to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." Shepard, 544 U.S. at 26.

The Board correctly found that the substance Guillen was convicted of possessing was cocaine. Each relevant criminal information specifically identified the substance involved in Guillen's offenses, and they report that Guillen was charged with "unlawfully and feloniously possess[ing] a controlled substance, to-wit: Cocaine." Cocaine is listed under Schedule II in 21 U.S.C. § 812(c), which means that it is a controlled substance under the definition provided in § 802.

23

Guillen's convictions for cocaine possession are thus "relating to a controlled substance (as defined in section 802 of title 21)," and the Board correctly determined that he was eligible for removal on that basis.

We are therefore obliged to deny Guillen's petition for review.

**PETITION DENIED.**