# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2025

Lyle W. Cayce
Clerk

_____

No. 24-30255

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DELVIN EDMOND,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CR-113-1

_____

Before ELROD, *Chief Judge*, and KING and GRAVES, *Circuit Judges*.

PER CURIAM:*

Delvin Edmond pleaded guilty to several drug charges and was sentenced to 262 months of imprisonment, along with a five-year term of supervised release and five special conditions of supervised release. Because we conclude that the district court plainly erred in applying the career offender enhancement in determining his sentence, we VACATE the sentence and REMAND for resentencing.

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-30255

**I.**

Edmond was charged with five federal drug offenses: conspiracy to distribute and possess with intent to distribute methamphetamine; two counts of distribution of methamphetamine; distribution of methamphetamine and fentanyl; and possession with intent to distribute methamphetamine. Edmond pleaded guilty to all five charges without a plea agreement.

Prior to sentencing, the Presentence Investigation Report (PSR) calculated the advisory Guidelines imprisonment range at 262 to 327 months. The PSR reached this conclusion by determining that Edmond is a career offender under U.S.S.G. § 4B1.1 and the statutory maximum for some of his offenses is life. Specifically, the PSR explained that Edmond is considered a career offender because (1) he was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he has two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1. The PSR referenced Edmond's June 2011 conviction for distribution of cocaine in Louisiana state court and his November 2019 conviction for possession with intent to distribute synthetic cannabinoids in Louisiana state court as his two prior felony controlled-substance-offense convictions. If the career offender enhancement had not applied, Edmond's Guidelines range would have been 151 to 188 months. *See* U.S.S.G. Ch. 5, Pt. A.

While Edmond did file a motion for a downward variance, he did not object to the PSR. At sentencing, the district court adopted the PSR's findings and denied Edmond's motion for a downward variance. The district court then imposed a sentence of 262 months and a five-year term of supervised release, subject to all the standard conditions and five special

2

No. 24-30255

conditions of supervised release. Edmond timely appealed, arguing that the district court erroneously applied the career offender enhancement.

## II.

Because Edmond did not object to the application of the career offender enhancement before the district court, our review is for plain error. *See United States v. Huerra*, 884 F.3d 511, 519 (5th Cir. 2018). "To prevail on plain error review, [Edmond] must show a forfeited error that is clear or obvious and that affects his substantial rights." *United States v. Johnson*, 943 F.3d 735, 737 (5th Cir. 2019). Upon such a showing, we may exercise our discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citation omitted) (cleaned up).

## III.

The crux of this appeal is whether the district court plainly erred in applying the career offender enhancement because Edmond's 2019 Louisiana conviction for possession with intent to distribute synthetic cannabinoids is not a "controlled substance offense" for purposes of the enhancement.[1] We start by analyzing whether the district court's determination that this conviction was a qualifying offense was clear or obvious error.

For purposes of the career offender enhancement, the Guidelines define a "controlled substance offense" as one "punishable by imprisonment for a term exceeding one year," when that offense "prohibits the manufacture, import, export, distribution, or dispensing of a controlled

---

[1] Initially, Edmond also argued that his 2011 Louisiana conviction for distribution of cocaine was not a qualifying "controlled substance offense." However, Edmond ultimately conceded that he had not met his burden on this front.

substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b)(1). While the Guidelines do not explicitly define the term "controlled substance," "we define 'controlled substance' . . . by looking to the definition supplied by the [Controlled Substances Act (CSA)]" at the time of the defendant's sentencing for the instant offense. *United States v. Minor*, 121 F.4th 1085, 1089 (5th Cir. 2024). The CSA thus provides the "generic" version of a controlled substance offense. *See United States v. Frierson*, 981 F.3d 314, 316 (5th Cir. 2020).

To determine whether the defendant's prior crime of conviction qualifies as a controlled substance offense, we employ the "categorical" approach. *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016). Under the categorical approach, we "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [crime]." *Mathis v. United States*, 579 U.S. 500, 504 (2016). We pay no attention to the facts underlying the defendant's conduct. *Id.* "[A] prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision if the crime of conviction criminalizes a greater swath of conduct than the elements of the relevant Guidelines offense." *Minor*, 121 F.4th at 1089 (citations omitted) (cleaned up). That means that "[t]he prior conviction qualifies as [a career offender enhancement] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). In comparing the generic offense and the prior offense, we use the prior offense statute in effect at the time the defendant committed the prior offense. *See United States v. Sanchez-Sanchez*, 779 F.3d 300, 305 (5th Cir. 2015); *see also Minor*, 121 F.4th at 1089.

When the prior convictions are state offenses, there is an additional wrinkle. We apply the "realistic probability test," meaning that the

defendant must establish "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of the crime." *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (citation omitted); *see also Minor*, 121 F.4th at 1093 n.9. "To show a realistic probability, an offender . . . must at least point to his case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Castillo-Rivera*, 853 F.3d at 222 (citation omitted) (cleaned up).

When a prior offense statute is "divisible," meaning that the single statute itself "list[s] elements in the alternative, and thereby define[s] multiple crimes" rather than merely setting out different factual means of satisfying an element, courts apply a modified categorical approach. *Mathis*, 579 U.S. at 505. Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505-06. The court then essentially applies the categorical approach, comparing the crime that the defendant was convicted of to the generic offense. *See id.* at 513 (explaining that the modified categorical approach is merely a "tool" to determine if the predicate crime of conviction is a categorical match with the generic crime); *see also United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017).

The parties disagree as to whether Edmond's 2019 Louisiana conviction for possession with intent to distribute synthetic cannabinoids, pursuant to La. R.S. § 40:966(A) (distribution statute for Schedule I drugs), is subject to the categorical or the modified categorical approach. Edmond argues that the categorical approach applies and that Louisiana's definition of synthetic cannabinoids, as provided in La. R.S. § 40:964 (drug schedule), at the time of his prior offense conduct was categorically broader (and applied in a broader way) than the CSA's definition at the time of the instant offense.

No. 24-30255

*See Frierson*, 981 F.3d at 318 (explaining that we read the Louisiana distribution statutes in conjunction with the drug schedule). The Government argues that La. R.S. § 40:966(A) is divisible by each specific form of drug, including each drug compound and chemical structure of synthetic cannabinoid, and thus it is appropriate to apply the modified categorical approach.

We have not previously analyzed whether La. R.S. § 40:966(A) is divisible. However, we need not resolve this question because under either the categorical or modified categorical approach, it was clear and obvious error for the district court to conclude that Edmond's 2019 conviction for possession with intent to distribute synthetic cannabinoids was a qualifying "controlled substance offense."[2]

Applying the categorical approach, Louisiana's definition of "synthetic cannabinoids," as provided when Edmond committed the offense of possession of synthetic cannabinoids with intent to distribute in April 2018, is categorically broader than the CSA's definition of synthetic cannabinoids when the district court sentenced him in April 2024. *Compare* La. R.S. § 40:964, Schedule I(F) (effective August 1, 2017, to July 31, 2018), *with* 21 U.S.C. § 812(c), Schedule I(d). The CSA prohibits "any material,

_____

[2] While we do not definitively rule on whether La. R.S. § 40:966(A) is divisible, we note that statutes may be partially divisible. For instance, a statute may "set[] forth alternative elements," making the statute divisible by those elements, but it may also set forth various "alternative means of proving" those elements. *Frierson*, 981 F.3d at 316; *see also id.* at 316-18 (explaining that Louisiana's Schedule II drug statute was divisible by broader drug type but not analyzing whether the statute was divisible by the various forms of those drug types); *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1182-83, 1185 (11th Cir. 2018) (concluding that a Florida statute was divisible by specific drug type, such that possession of marijuana was a separate offense from possession of a hallucinogen, but indicating the statute was not divisible by different forms of the same drug, such that possession of marijuana and possession of hashish were the same offense).

compound, mixture, or preparation which contains any quantity of cannabimimetic agents," and it defines "cannabimimetic agents" based on 7 "structural classes" and 15 specific chemical compounds. 21 U.S.C. § 812(c), Schedule I(d). In contrast, La. R.S. § 40:964, taken with La. R.S. § 40:966(A), prohibited 28 different chemical compounds and chemical groups.

Edmond also establishes a realistic probability that Louisiana would enforce its Schedule I statute against synthetic cannabinoids not prohibited by the CSA, citing *State v. Henry*, 2019-65 (La. App. 3 Cir. 12/18/19), 287 So. 3d 847. There, the Louisiana Third Circuit Court of Appeal affirmed the defendant's conviction for distribution of a Schedule I controlled dangerous substance (synthetic marijuana). *Id.* at 1, 29, 287 So. 3d at 850, 866. The lab report concluded that the specific substance was "synthetic cannabinoid, Group 19, Schedule I," *id.* at 18, 287 So. 3d at 860, which at the time of the defendant's offense conduct, was: "Butaldehydeamidoindoles: Any compound containing a N-(1-oxobutan-2yl)-1H-indole-3-carboxamide structure, with or without substitution in the indole ring by an alkyl, haloalkyl, cyanoalkyl, alkoxy, aryl, aryl halide, alkylarylhalide, cycloalkymethyl, cycloalkylethyl, alkenyl, haloalkenyl, aliphatic alcohol, hydroxyl, morpholinoethyl, alkylmorpholinomethyl, alkylpiperidinylmethyl or a tetrahydropyranylmethyl group, whether or not further substituted on the butaldehyde group to any extent," La. R.S. § 40:964, Schedule I(F) (effective August 1, 2016, to July 31, 2017). This specific form of synthetic cannabinoid has never been on the federal schedule. 21 U.S.C. § 812(c), Schedule I(d). Accordingly, under a categorical approach, the district court clearly and obviously erred in finding that this offense was a sufficient predicate for application of the career offender enhancement.

Alternatively applying the modified categorical approach, and assuming *arguendo* that La. R.S. § 40:966(A) is divisible by specific forms of

synthetic cannabinoids, the district court clearly and obviously erred because it had no information before it establishing what specific form of synthetic cannabinoid Edmond's conviction involved. As mentioned, under the modified categorical approach, the court may look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of," so that the court may then compare the crime of conviction with the generic offense. *Mathis*, 579 U.S. at 505-06. These documents are commonly referred to as the "*Shepard* documents." *Sanchez-Sanchez*, 779 F.3d at 306. A court may not solely rely on "the PSR's conclusory characterization of a prior conviction," as to do so constitutes clear and obvious error, *United States v. McCann*, 613 F.3d 486, 502 (5th Cir. 2010), provided that the defendant has at least argued that his crime of conviction is not a controlled substance offense, *see United States v. Ochoa-Cruz*, 442 F.3d 865, 867 (5th Cir. 2006).

Here, no *Shepard* documents were before the district court at the time of sentencing. So to the extent the district court applied the modified categorical approach, it seems to have solely relied on the PSR. That was clear and obvious error. *McCann*, 613 F.3d at 502.

Even if the district court had the *Shepard* documents that are now before this Court on a supplemented record, the district court would not have been able to identify exactly what form of synthetic cannabinoid Edmond's conviction involved. The bill of information merely charged Edmond with "possession of synthetic cannabinoids." The minutes report likewise described Edmond's charge and ultimate conviction as "possession with intent to distribute synthetic cannabinoids." Thus, assuming that the specific type of synthetic cannabinoid is an element of the offense, it is unclear what the offense of conviction was.

In these situations, the district court cannot use the modified categorical approach to enhance the defendant's sentence. *See McCann*, 613 F.3d at 503-04 (vacating the defendant's sentence where the district court could not use the modified categorical approach to justify a sentence enhancement because the *Shepard* documents were lost in Hurricane Katrina); *United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005) (explaining that a district court erred in imposing a sentencing enhancement under the modified categorical approach when it had no *Shepard* documents before it). Therefore, based on this supplemented record, it was clear and obvious error to conclude that the 2019 conviction was a predicate offense for purposes of the career offender enhancement.

Having concluded there was clear and obvious error, we further conclude that the error affected Edmond's substantial rights. "Absent unusual circumstances," such as if the sentencing judge makes clear he would have imposed the same sentence irrespective of the Guidelines, "a defendant need only point to the application of an incorrect, higher Guidelines range and the sentence he received thereunder" to show the sentencing error affected his substantial rights. *United States v. Parra*, 111 F.4th 651, 661 (5th Cir. 2024) (citation omitted) (cleaned up). Edmond has done so, as he has demonstrated that without the application of the career offender enhancement, his Guidelines range would have been 151 to 188 months—nearly a decade shorter on the low end than that provided under the erroneous Guidelines range. There is no indication that the district judge would have veered outside of the correct Guidelines range, particularly since he imposed a sentence at the bottom of the range.

Finally, we conclude that this error warrants an exercise of our discretion to correct. "In sentencing cases, 'the Supreme Court "expects relief to ordinarily be available to defendants"'' if the first three plain-error elements are met." *Id.* at 663 (citations omitted). This Court has exercised

its discretion to correct sentencing errors with a much lower impact on a defendant's sentence. *See United States v. Marroquin*, 884 F.3d 298, 301 (5th Cir. 2018) (exercising discretion to correct a sentencing error when there was a four-month disparity between the sentence and the correct Guidelines range). We do the same here.[3]

## IV.

For the reasons provided above, we VACATE Edmond's sentence and REMAND for further proceedings consistent with this opinion.

---

[3] Because we conclude that the district court plainly erred in imposing the career offender enhancement, and thus we vacate the sentence, we do not delve into Edmond's arguments that his sentence was substantively unreasonable or that there were conflicts in the district judge's oral pronouncement of the sentence compared to the written judgment. However, we note that the district judge did seemingly rely on Edmond's bare arrest record and socioeconomic status in deciding his sentence, and there were impermissible conflicts between the oral pronouncement and the written judgment. Both were incorrect. *See United States v. Zarco-Beiza*, 24 F.4th 477, 482 (5th Cir. 2022); *United States v. Burney*, 992 F.3d 398, 400 (5th Cir. 2021); *United States v. Smothers*, No. 24-30281, 2024 WL 4880401, at *1 (5th Cir. Nov. 25, 2024).