**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12865

Non-Argument Calendar

————————————

MD ZABERUL HASAN,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A061-152-095

————————————

Before NEWSOM, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Md Zaberul Hasan seeks review from the Board of Immigration Appeals' order dismissing his appeal of the Immigration Judge's decision ordering him removed for being inadmissible

under 8 U.S.C. § 1182(a)(2)(A)(i)(II) for a conviction "relating to a controlled substance."

Hasan argues that he is not removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because the government has not established that the controlled substance for which he was convicted, XLR11—a form of synthetic marijuana—was listed on the federal controlled substance schedules at the time he committed the relevant offenses.  He also contends that the BIA's determination that he is inadmissible based on his state conviction for XLR11 is impermissibly retroactive because it added new legal consequences to his conviction.  Because the BIA did not err in concluding that Hasan was convicted of a predicate controlled-substance offense, we deny the petition.

**I**

Hasan, a citizen of Bangladesh, became a lawful permanent resident in June 2010.  In 2012, he began working as a cashier in a convenience store in Montverde, Florida.  He quickly ran into legal trouble.  In July 2013, he was charged with two violations of Fla. Stat. § 893.13(1)(c) related to XLR11.[1]  The first count—for what we'll call the sales offense—alleged that "on or about" April 3 "through to" June 12, 2013, Hasan sold XLR11 within 1,000 feet of

---

[1] In 2013, Fla. Stat. § 893.13(1)(c) provided that "it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance in, on, or within 1,000 feet of the real property comprising a . . . public or private elementary, middle, or secondary school." Fla. Stat. § 893.13(1)(c) (2013).

a school.  The second count—for what we'll call the possession offense—charged that "on or about" April 3, 2013, Hasan possessed, with the intent to sell or deliver, XLR11 within 1,000 feet of a school.  In October 2013, he pleaded nolo contendere to and was convicted of both counts.

Around the time of Hasan's criminal activity, the legal status of XLR11 was in flux.  In a December 2012 emergency order, the Florida Attorney General listed the drug as a Schedule I controlled substance for state-law purposes.  *See Pando v. Blair*, 2017 WL 3835858, at *2 (M.D. Fla. Aug. 10, 2017).  On May 16, 2013, XLR11 was temporarily listed as a Schedule I controlled substance for federal-law purposes.[2]  *See* Schedules of Controlled Substances: Temporary Placement of Three Synthetic Cannabinoids into Schedule I, 78 Fed. Reg. 28,735 (May 16, 2013).  So XLR11 was illegal under Florida law prior to Hasan's sales and possession offenses, but it was federally scheduled after the possession offense and in the middle of the time period specified for the sales offense.

In 2016, Hasan traveled to Bangladesh.  Upon his return, DHS initiated removal proceedings against him because of his 2013 convictions.  Hasan moved to terminate the proceedings on the ground that he was not inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because his Florida convictions did not relate

---

[2] XLR11 was permanently scheduled on May 11, 2016.  *See* Schedules of Controlled Substances: Placement of UR–144, XLR11, and AKB48 into Schedule I, 81 Fed. Reg. 29,142 (May 11, 2016); *see also* 21 C.F.R. 1308.11(d)(49) (2017).

4                    Opinion of the Court                    24-12865

to a federally controlled substance when he committed the offenses. The IJ denied Hasan's motion and ultimately ordered him removed. The BIA affirmed the IJ's order. This appeal ensued.

## II

In reviewing the agency's decision, we review the decision of the BIA. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We also review the IJ's decision to the extent that the BIA expressly adopted the IJ's opinion. *Id.* And if the BIA "adopt[ed] the IJ's reasoning, we review [that] as well." *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1312 (11th Cir. 2006). Here, the BIA affirmed the IJ's decision on the grounds that the IJ "permissibly found" that Hasan's conviction involved conduct that occurred after XLR11 was added to the federal schedules, so we review the BIA's decision as well as the IJ's underlying findings. *See Kazemzadeh*, 577 F.3d at 1350.[3]

We review de novo the BIA's legal determinations. *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020). We

---

[3] As a preliminary matter, we have jurisdiction to review Hasan's petition. Under the criminal-alien bar, we lack jurisdiction to consider final orders of removal against an alien found removable on the ground that he was convicted of a controlled-substance offense under 8 U.S.C. § 1182(a)(2)(A)(i)(II). 8 U.S.C. § 1252(a)(2)(C). But this jurisdictional restriction does not preclude us from reviewing constitutional claims or questions of law raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D); *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1179 (11th Cir. 2018). And here, Hasan raises a question of law: whether he is subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(II) when he committed at least a portion of the state offense conduct before XLR11 was added to the federal schedules.

24-12865                Opinion of the Court                5

review the BIA's factual findings for substantial evidence—a "highly deferential" standard. *Id.* (citation modified); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

A lawful permanent resident who returns from abroad is not usually considered an applicant for admission. *See* 8 U.S.C. § 1101(a)(13)(C); *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1175 (11th Cir. 2012). But a lawful permanent resident who commits certain crimes identified in 8 U.S.C. § 1182(a)(2) and subsequently returns to the United States after traveling abroad is treated as an alien seeking admission, regardless of the length of the trip. 8 U.S.C. § 1101(a)(13)(C)(v); *Poveda*, 692 F.3d at 1175.[4]

Any alien who is convicted of a violation of (as relevant here) state law "relating to a controlled substance" is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(II). A "controlled substance" is any substance included in one of the five federal drug schedules. 21 U.S.C. § 802(6).

---

[4] In removal proceedings against an alien seeking admission, the alien normally bears the burden of establishing that he is admissible. 8 U.S.C. § 1229a(c)(2)(A). But the BIA has held that, when a returning lawful permanent resident is charged with inadmissibility on the grounds that he committed a § 1182(a)(2) crime, DHS must prove by clear and convincing evidence that the alien did indeed commit the offense. *Matter of Rivens*, 25 I. & N. Dec. 623, 625–26 (BIA 2011). In accordance with *Rivens*, the BIA applied the clear-and-convincing-evidence standard in this case, and it concluded that DHS satisfied its evidentiary burden.

To determine whether a state-law offense "relat[es] to a controlled substance banned under federal law," we use the "categorical approach." *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1329 (11th Cir. 2022). Under the categorical approach, we must confine our consideration only to the fact of conviction and the statutory definition of the offense. "We do not consider the facts of the case" but instead ask only whether the state offense "*necessarily* involves facts equating the generic federal offense." *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013).

When the statute of conviction is "divisible," however, we apply the "modified categorical approach." *Guillen*, 910 F.3d at 1180. A statute of conviction is divisible if "it lists a number of alternative elements that effectively create several different crimes." *Id.* (citation modified). Under the modified categorical approach, "[w]e must first identify which of the alternative elements [a defendant] was convicted of, then discern whether those elements imply that the offense is related to a controlled substance under federal law." *Id.* at 1185. In aid of this inquiry, we may look beyond the fact of conviction and examine "a small set of record documents," including the charging documents and the plea agreement. *Id.* at 1180. But, as with the categorical approach, "we do not consider the facts underlying the conviction." *Lauture v. U.S. Att'y Gen.*, 28 F.4th 1169, 1173 (11th Cir. 2022).

The amending of statutes—including, as relevant here, the addition of a drug to the federal schedules—creates the possibility of retroactive application. In *Landgraf v. USI Film Products*, the

24-12865                Opinion of the Court                7

Supreme Court held that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." 511 U.S. 244, 269 (1994) (citation modified). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70. *Landgraf* prescribes a two-prong test to determine whether a statute is impermissibly retroactive:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have [an impermissible] retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

*Id.* at 280. If the statute will have an impermissible retroactive effect, then it cannot be applied to conduct that predated the enactment. *Id.*

### III

The parties do not dispute that the statute of conviction, Fla. Stat. § 893.13(1)(c), is divisible, nor do they dispute that Hasan's

state-law conviction involved XLR11.[5]  Accordingly, the only issue on appeal is whether the agency properly concluded that Hasan is inadmissible for a controlled-substance violation under 8 U.S.C. § 1182(a)(2)(A)(i)(II) when XLR11 was listed in the Controlled Substances Act ("CSA") at the time of his state convictions, but was not listed during at least a portion of the time in which he committed one of the underlying offenses.

Hasan seems to marshal two separate but related arguments that his 2013 convictions were not related to a controlled substance.  First, he appears to claim that we must—as a general rule—determine whether a state drug offense matched the federal schedules at the time of the offenses, rather than at the time of the convictions.  Second, he argues that, in his case, it would be impermissibly retroactive to compare the Florida and federal schedules at the time of his convictions.  For the following reasons, both arguments fail.

## A

Hasan asserts that he is not inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because DHS "failed to prove by clear and convincing evidence that XLR11 was a federally controlled substance *when [he] committed the offense* of Possession and Sale of XLR11."  Br.

---

[5] Applying the modified categorical approach would also lead us to conclude that Hasan was convicted of offenses involving XLR11.  The criminal information listed two counts related to the sale and possession of XLR11, and the judgment stated that Hasan pleaded nolo contendere to both counts and was adjudicated guilty.

of Pet'r 25 (emphasis added).  This argument implies that, when determining whether a state drug conviction relates to a federally controlled substance, we compare the conviction to the federal schedules in effect at the time of the offense.  But that is not what our precedents say.

When deciding whether a state law relates to a federally controlled substance, we have compared the state law to the federal controlled substance schedules in effect at the time of an alien's *conviction*.  In *Gordon v. U.S. Attorney General*, for example, we rejected an alien's argument that we "must compare his conviction with the federal controlled substances schedules in effect at the time of his removal proceedings rather than those in effect at the time of his conviction."  962 F.3d 1344, 1351 n.4 (11th Cir. 2020).  Instead, we looked to the schedules in effect at the time of Gordon's 2003 conviction for possession with intent to distribute ecstasy, concluded that his conviction qualified as a felony punishable under the CSA and therefore upheld the BIA's determination that he was removable for having been convicted of an aggravated felony.  *Id.* at 1350–51.  Similarly, in *Morfa Diaz v. Mayorkas*, we considered the CSA schedules in effect at the time of Morfa Diaz's 1996 conviction for attempted sale of cocaine rather than those in effect during his removal proceedings.  43 F.4th 1198, 1202–03 (11th Cir. 2022).

In light of *Gordon* and *Morfa Diaz*, we reject Hasan's contention that we must compare an alien's state-law drug convictions to the federal schedules in effect at the time of the offenses.

**B**

Hasan's stronger argument is that it would be impermissibly retroactive to take our conventional time-of-conviction approach here. In his view, if conduct that occurred before the addition of XR11 to the federal schedules can underlie a conviction relating to a controlled substance, XLR11's scheduling would attach new liability to his past conduct in violation of *Landgraf*'s second prong. *See* 511 U.S. at 280.

In support of this argument, Hasan relies extensively on *Lopez Ventura v. Sessions*, 907 F.3d 306 (5th Cir. 2018). There, the Fifth Circuit held that it was impermissibly retroactive to apply § 1182(a)(2)(A)(i)(II) to an alien who was convicted of possessing AB-CHMINACA—another synthetic cannabinoid—when AB-CHMINACA was scheduled before his conviction but after the possession offense took place. *Id.* at 315–16. Hasan claims his case is no different—the law changed when XLR11 was scheduled, and it would be impermissibly retroactive to apply the new law to his pre-scheduling conduct.

But even if we were to adopt the Fifth Circuit's logic in *Lopez Ventura*, Hasan's case is different in that it does not involve *only* pre-scheduling conduct.[6] The IJ found that a portion of Hasan's drug

---

[6] We do not address whether the Fifth Circuit was correct. The government argues that *Lopez Ventura* was wrongly decided and that we should reject our sister circuit's approach to retroactivity. Hasan, unsurprisingly, disagrees. The application of § 1182(a)(2)(A)(i)(II) to purely pre-scheduling conduct is a thorny issue, and we leave it for another day.

sales occurred after XLR11 was scheduled because the criminal information stated that Hasan's sales offense took place between April 3, 2013 and June 12, 2013. The BIA endorsed the IJ's findings. It observed that Hasan was specifically convicted of selling or delivering XLR11 "'on or about' April 3 'through to' June 12." In the BIA's view, "[w]hen used to refer to acts committed in an ordered sequence such as a date range, the prepositional phrase 'through to' denotes acts occurring throughout the whole range, up to and including the end date."

We decline to disturb these administrative findings. A reasonable factfinder would not be "compelled to conclude" that the BIA and IJ misread the criminal information underlying Hasan's state-court convictions. 8 U.S.C. § 1252(b)(4)(B). In particular, the BIA's reading of "through to"—that it signifies repeated actions throughout a date range—is, as a matter of fact, a reasonable understanding of the charge embodied in the information. Hasan argues, to the contrary, that the information "charg[ed] the commission of a single offense of Sale of XLR11 occurring at some point within the date range described therein." Br. of Pet'r 45. But even assuming that Hasan's interpretation is reasonable, the record still "could support or contradict the conclusion of the BIA." *Lingeswaran*, 969 F.3d at 1286 (citation modified). When the record could support *or* contradict, we must affirm. *Id.* Because that alone is enough to clear the low bar of substantial-evidence review, the BIA's—and, by incorporation, the IJ's—factual findings are conclusive. *See id.*

★  ★  ★

Because Hasan sold XLR11 after it was federally scheduled, it makes no difference whether we look to the CSA schedules in effect at the time of his conviction or at the time of his offense. Under either approach, the result is the same:  We conclude that Hasan was convicted of a state drug offense related to a controlled substance and the application of 8 U.S.C. § 1182(a)(2)(A)(i)(II) is not impermissibly retroactive.

**PETITION DENIED.**